

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, Suite 700
Newark, New Jersey 07102

(973) 645-2700

July 8, 2022

Thomas Ashley, Esq.
Roy Greenman, Esq.

          Re: <u>Plea Agreement with Tyquan Daniels</u>

Dear Mr. Ashley and Mr. Greenman:

      This letter sets forth the plea agreement between your client, Tyquan Daniels, and the United States Attorney for the District of New Jersey ("this Office"). The government's offer to enter into this plea agreement will expire on **July 18, 2022 at 5:30 p.m.** if it is not accepted in writing by that date.

<u>Charge</u>

      Conditioned on the understandings specified below, this Office will accept a guilty plea from Tyquan Daniels, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to Count Two of the Superseding Indictment, Criminal Number 18-703 (JMV), which charges Tyquan Daniels with racketeering conspiracy, in violation of 18 U.S.C. Sections 1962(c) and 1962(d) and to the sole count of a Superseding Information (in satisfaction of the charges contained in the Superseding Indictment filed under Crim. No. 19-803) which charges Tyquan Daniels with racketeering conspiracy, in violation of 18 U.S.C. Sections 1962(c) and 1962(d). Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, if Tyquan Daniels enters a guilty plea and is sentenced on these charges to a term of imprisonment between 33 and 38 years' and five years' supervised release (the "Stipulated Sentencing Range"), and otherwise fully complies with all of the terms of this agreement, this Office will move, at the time of sentencing, to dismiss the other pending charges as to Tyquan Daniels, namely, Counts One, Three, Four, Five, Six, Seven, Eleven and Twelve of the Superseding Indictment under Crim. No. 18-703, and will

dismiss the charges contained in the Superseding Indictment under Crim. No. 19-803, and will not initiate any further criminal charges against Tyquan Daniels for 1) his crimes committed during his association with and participation in the activities of the drug trafficking enterprise described in paragraph one of the Superseding Indictment ("the DTE") an Enterprise as defined in 18 U.S.C. Section 1961, during the time period charged in the Superseding Indictment, and 2) his crimes committed during his association with and participation in the activities of the "BCB" Enterprise as described in the Superseding Information ("the BCB") an Enterprise as defined in 18 U.S.C. Section 1961, during the time period charged in the Superseding Information.

As part of his plea agreement, as to Count Two of Crim. No. 18-703, the defendant admits that he knowingly and intentionally agreed that at least one co-conspirator would commit two or more racketeering acts in furtherance of the conspiracy and that he personally committed the following acts:

<u>Conspiracy To Murder a Federal Witness (as charged in Crim. No. 18-703, Count One, Racketeering Act Two(b)</u>: alleges that from in or around October 2017 through in or about March 12, 2018, in Essex County, in the District of New Jersey and elsewhere, defendant did knowingly and willfully conspire with others to kill another person, namely "A.S.", with intent to prevent the communication by "A.S." to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, namely the conspiracy to distribute controlled substances pursuant to Title 21, United States Code, Section 846 as charged in the Superseding Indictment, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that in furtherance of the conspiracy, a co-conspirator did unlawfully kill "A.S." willfully, deliberately, maliciously and with premeditation, contrary to Title 18, united States Code, Sections 1512(a)(1)(C) and (a)(3)(A), in violation of Title 18, United States Code, Section 1512(k).

<u>Use of an Interstate Facility To Commit a Crime of Violence To Further Unlawful Activity</u> (as charged in Crim. No. 18-703, Count Two, Overt Act ff): alleges that in or about June, 2018, in Essex County, New Jersey, Tyquan Daniels did use an interstate facility, including telephones, to aid in the conspiracy to murder of "A.S." in furtherance of the DTE, in violation of Title 21, United States Code, Section 1952(a)(2).

All in violation of Title 18, United States Code, Sections 1962(c) and 1962(d), and Section 2.

As part of his plea agreement, as to the Superseding Information, the defendant admits that he knowingly and intentionally agreed that at least one co-conspirator would commit two or more racketeering acts in furtherance of the conspiracy and that he personally committed the following acts:

<u>Murder of "Raymond White"</u>: alleges that on or about May 13, 2018 in Essex County, in the District of New Jersey and elsewhere, defendant did purposely and knowingly cause the death and serious bodily injury resulting in death of another person, specifically "R.W.", in violation of N.J.S.A. Sections 2C:11-3(a)(1) & (2).

<u>Use of an Interstate Facility To Commit a Crime of Violence To Further Unlawful Activity</u>): alleges that on or about May 13, 2018, in Essex County, New Jersey, Tyquan Daniels did use an interstate facility, including telephones, to aid in the commission of the murder of "R.W." in furtherance of the Brick City Brims Enterprise, in violation of Title 21, United States Code, Section 1952(a)(2).

<u>Conspiracy to Distribute a Mixture or Substance Containing a Detectable Amount Of Heroin</u>: alleges that between January 2018 and June 2018, Tyquan Daniels, together with others, conspired to distribute a mixture or substance containing a detectable amount of heroin in furtherance of the activities of the Brick City Brims enterprise.

All in violation of Title 18, United States Code, Sections 1962(c) and 1962(d), and Section 2.

However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, Tyquan Daniels agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by Tyquan Daniels may be commenced against him, notwithstanding the expiration of the limitations period after Tyquan Daniels signs the agreement.

Should the Court at any time reject the plea under Federal Rule of Criminal Procedure 11(c)(1)(C) or act contrary to its terms, either party may elect to be relieved of the terms of this plea and the parties will be returned to the status prior to the entry of the plea. In the event that the Court defers a decision to accept the plea until the court has reviewed the presentence report neither party will move to withdraw from this agreement unless or until the

Court ultimately determines to reject the proposed plea.

Sentencing

The violations of 18 U.S.C. § 1962(c) and 1962(d) charged in Count Two of Crim. No. 18-703 and in the sole count of the Superseding Information to which Tyquan Daniels agrees to plead guilty carry a statutory maximum prison sentence of life. The sentences may run consecutively.

The above violations under Title 18 carry a statutory maximum fine equal to the greatest of: (1) $250,000; (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.

Further, in addition to imposing any other penalty on Tyquan Daniels, the sentencing judge: (1) will order Tyquan Daniels to pay an assessment of $100 per count pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing; (2) may order Tyquan Daniels to pay restitution pursuant to 18 U.S.C. §§ 3663 et seq.; (3) may order Tyquan Daniels, pursuant to 18 U.S.C. § 3555, to give notice to any victims of his offenses; (4) must order forfeiture, pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853; (5) may deny Tyquan Daniels certain statutorily defined benefits, pursuant to 21 U.S.C. §§ 862 and 862a and (6) must require Tyquan Daniels to serve a term of supervised release as follows: pursuant to 18 U.S.C. § 3583, at least five years which will begin at the expiration of any term of imprisonment imposed.

Should Tyquan Daniels be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Tyquan Daniels may be sentenced to not more than 5 years' imprisonment, in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

This Office and Tyquan Daniels agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence to be imposed on Tyquan Daniels, should be as follows: a sentence between 33 and 38 years' imprisonment and five years' supervised release (the "Stipulated Sentencing Range"). Pursuant to Rule 11(c)(1)(C), this Office and Tyquan Daniels agree that a sentence of 33 to 38 years' imprisonment and five years' supervised release is the appropriate disposition of this case and constitutes a reasonable sentence that is sufficient, but not greater than necessary, taking into account all of the

factors set forth in 18 U.S.C. § 3553(a). If the Court accepts this plea agreement, then Tyquan Daniels must be sentenced accordingly.

## Rights of this Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office reserves its right to take any position with respect to the appropriate sentence to be imposed on Tyquan Daniels by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Tyquan Daniels's activities and relevant conduct with respect to this case.

## Stipulations

This Office and Tyquan Daniels agree to stipulate at sentencing to the statements set forth in the attached Schedule A, including that the appropriate sentence to be imposed is the Stipulated Sentencing Range, regardless of the advisory range under the United States Sentencing Guidelines. These stipulations are offered as recommendations to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and they bind the Court once, and if, the Court accepts this plea agreement. To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence. Moreover, this agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with the stipulations set forth in the attached Schedule A, this Office shall not be bound by any such stipulation. A determination that any stipulation is not binding shall not release either this Office or Tyquan Daniels from any other portion of this agreement, including any other stipulation. If the sentencing court rejects a stipulation, both parties reserve the right to argue on appeal or at post- sentencing proceedings that the Court was within its discretion and authority to do so. These stipulations do not restrict this Office's right to respond to questions from the Court and to correct misinformation that has been provided to the Court.

## Waiver of Appeal and Post-Sentencing Rights

This Office and Tyquan Daniels agree that, provided the District Court imposes a sentence in accordance with this Rule 11(c)(1)(C) plea agreement, neither party will appeal that sentence. Tyquan Daniels further agrees that, in exchange for the concessions the United States made in entering into this Rule 11(c)(1)(C) plea agreement, he will not challenge his conviction for any reason by any means, other than ineffective assistance of counsel, and he will not challenge or seek to modify any component of his sentence for any reason by any means, other than ineffective assistance of counsel. The term "any means" includes, but is not limited to, a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(B) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), or any other motion, however captioned, that seeks to attack or modify any component of the judgement of conviction or sentence. But this waiver does not apply to:

(1) Any proceeding to revoke the term of supervised release;

(2) A motion for a reduction of the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A);

(3) An appeal from the denial of a motion for a reduction of the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) on the grounds that the court erred in finding that there were no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances in denying the motion as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

Lastly, the parties have stipulated to certain facts in the Schedule A to this plea agreement. Accordingly, the parties agree that they will not challenge at any time, using any means, the District Court's acceptance of those stipulated facts.

## Immigration Consequences

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offenses will likely result in his being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. The defendant understands that the immigration consequences

of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Tyquan Daniels. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement), or any third party from initiating or prosecuting any civil or administrative proceeding against Tyquan Daniels.

No provision of this agreement shall preclude Tyquan Daniels from pursuing in an appropriate forum, when permitted by law, an appeal, collateral attack, writ, or motion claiming that Tyquan Daniels received constitutionally ineffective assistance of counsel.

## No Other Promises

This agreement constitutes the plea agreement between Tyquan Daniels and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,
PHILIP R. SELLINGER
United States Attorney

By: Robert Frazer
Naazneen Khan
Assistant U.S. Attorneys

APPROVED:

Jamel Semper
Deputy Chief, Criminal Division

      I have received this letter from my attorneys, Thomas Ashley and Roy Greenman. I have read it. My attorneys and I have discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations, waiver, forfeiture, immigration consequences, as well as the impact of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure has upon this agreement. I understand this letter fully. I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____                   Date: 7/13/22
Tyquan Daniels

      I have discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations, waiver, forfeiture, and immigration consequences, as well as the impact of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure has upon this agreement. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____                   Date:
Thomas Ashley, Esq.

_____                   Date: 7/13/22
Roy Greenman, Esq.

<u>Plea Agreement With Tyquan Daniels</u>

<u>Schedule A</u>

1. This Office and Tyquan Daniels agree to stipulate to the following facts:

**Superseding Indictment, Crim. No. 18-703, Count Two**

a. During the time period between January 2013 and January 2019, Tyquan Daniels became a member and associate of the Drug Trafficking Enterprise (the "DTE") as described in paragraph one the Superseding Indictment under Criminal Number 18-703.

b. As a member and associate of the DTE, Tyquan Daniels agreed with at least one other person to conduct and to participate, directly and indirectly, in the conduct of the DTE's affairs through a pattern of racketeering activity. As part of this agreement, Tyquan Daniels agreed to personally participate in, and did in fact participate in, at least two racketeering acts.

c. From in or around October 2017 through on or about March 12, 2018, Tyquan Daniels agreed with other members of the DTE to shoot and kill "A.S.", who the leadership of the DTE believed to be a federal informant providing information about the DTE.

d. The agreement to shoot and kill "A.S." was formed, at least in part, to maintain and increase Tyquan Daniels's position in the DTE and for pecuniary gain.

e. On or about March 12, 2018, in order to prevent "A.S." from cooperating with federal law enforcement and providing incriminating evidence of the DTE, members of the DTE went to the residence of "A.S." in Bloomfield, New Jersey, and shot and killed "A.S." a short distance from his home while "A.S." was walking his dog.

f. Tyquan Daniels aided in the murder conspiracy by helping conspirators hide the murder weapon after March 12, 2018.

g. Between on or about March, 2018 through on or about June 2018, Tyquan Daniels aided and participated in the conspiracy to murder "A.S." by communicating with others by telephone.

h. During the time that Tyquan Daniels was a member or associate of the DTE, Tyquan Daniels did conspire, that is agree, with others in the gang, to commit at least two criminal acts in furtherance of the enterprise.

### Superseding Information

i. During in or about January 2018 through in or about June 2018 Tyquan Daniels became a member of the Brick City Brims set of the Bloods street gang ("the BCB") as described in the Superseding Information.

j. As a member and associate of the BCB, Tyquan Daniels agreed with at least one other person to conduct and to participate, directly and indirectly, in the conduct of the BCB's affairs through a pattern of racketeering activity. As part of this agreement, Tyquan Daniels agreed to personally participate in, and did in fact participate in, at least two racketeering acts.

k. The Brick City Brims controlled drug territory in East Orange, Orange and elsewhere in New Jersey as part of their enterprise and from which members and associates agreed to and did distribute quantities of heroin, among other controlled substances,

l. On or about May 13, 2018, in furtherance of his membership in the BCB and in order to maintain and increase his position within the BCB, and in part to keep a rival gang from infringing on the BCB's drug territory in East Orange, New Jersey, Tyquan Daniels, in Essex County, New Jersey, shot and killed a member of a rival street gang, Raymond White ("R.W.").

m. On or about May 13, 2018 Tyquan Daniels did use an interstate facility, namely a telephone, to aid in the murder of "R.W."

## Proposed Factual Basis Questions - Daniels

(1) During the time period between January 2013 and January 2019, did you become a member or associate of the Drug Trafficking Enterprise (the "DTE") as described in paragraph one of the Superseding Indictment under Criminal Number 18-703?

(2) Did the DTE, among other illegal activities, distribute large amounts of heroin, cocaine, marijuana and fentanyl in Newark, New Jersey and elsewhere?

(3) In furtherance of the DTE, in order to protect members of the DTE and others from prosecution for the illegal drug distribution of the enterprise, did the leadership of the DTE cause you and other conspirators to plan to murder a member of the DTE named Aristedes Statiroudis, a/k/a "Teddy," ("Statiroudis"), because the leadership of the DTE found out Statiroudis was cooperating with law enforcement?

(4) On or about March 12, 2018, in order to prevent Statiroudis from cooperating with federal law enforcement and providing incriminating evidence of the DTE, did members of the DTE go to Statiroudis's residence in Bloomfield, New Jersey?

(5) On or about March 12, 2018, did members of the DTE carry out the shooting murder of Statiroudis a short distance from his home while Statiroudis was walking his dog?

(6) Did you aid the DTE members by storing and trying to dispose of firearms used in the murder of "A.S."?

(7) Did you use an interstate facility, namely a telephone, to further the conspiracy to murder "A.S" by communicating with other members of the DTE?

(8) During the time that you were a member or associate of the DTE, did you knowingly conspire, that is agree, with others in the gang, to

        commit at least two criminal acts in furtherance of the enterprise?

(9) During the time that you were a member or associate of the DTE, did you yourself carry out at least two criminal acts in furtherance of the enterprise?

### The Superseding Information

(10) During in or about January 2018 through in or about June 2018 did you become a member of the Brick City Brims set of the Bloods street gang ("the BCB") as described in the Superseding Information.

(11) As a member and associate of the BCB, did you agree with at least one other person to conduct and to participate, directly and indirectly, in the conduct of the BCB's affairs through a pattern of racketeering activity?

(12) As part of this agreement, did you agree to personally participate in, and did in fact participate in, at least two racketeering acts?

(13) Did the BCB control drug territory in East Orange, Orange and elsewhere in New Jersey as part of their enterprise and from which members and associates agreed to and did distribute quantities of heroin, among other controlled substances?

(14) On or about May 13, 2018, in furtherance of your membership in the BCB and in order to maintain and increase your position within the BCB, and in part to keep a rival gang from infringing on the BCB's drug territory in East Orange, New Jersey, did you, in Essex County, New Jersey, shoot and kill a member of a rival street gang, Raymond White, a/k/a "Ruger" ("R.W.")?

(15) On or about May 13, 2018, did you did use an interstate facility, namely a telephone, to aid in the murder of "R.W."

The United States makes the following representations to the Court:

- The DTE described in Superseding Indictment under Criminal Number 18-703 is an enterprise as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4).

- The activities of this enterprise affected interstate commerce.

- The members of the enterprise engaged in a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), in furtherance of the enterprise's objectives.

- The DTE is a structured entity, with a core of personnel which has remained intact through the years, and the group has an existence separate and apart from the commission of any specific racketeering act.

- Aristedes Statiroudis was, at the time of his murder in March 2018, a federal informant for the Drug Enforcement Administration and the subject matter of his cooperation concerned potential federal drug charges.

- The Brick City Brims ("BCB") described in the Superseding Information is an enterprise as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4).

- The activities of this enterprise affected interstate commerce.

- The members of the enterprise engaged in a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), in furtherance of the enterprise's objectives.

- The BCB is a structured entity, with a core of personnel which has remained intact through the years, and the group has an existence separate and apart from the commission of any specific racketeering act.

- Raymond White was, at the time of his murder in May 2018, a member of a rival enterprise whose murder elevated Daniels status within the BCB.